IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20523 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. _____ |
| GHANA SOCIAL MARKETING FOUNDATION<br>8 Gowa Close, Roman Ridge<br>P.O. Box 1847<br>Cantonments, Accra, GHANA | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

The United States of America, on behalf the Unites States Agency for International

Development (USAID), brings this complaint against Ghana Social Marketing Foundation

(GSMF), a Ghanaian private not for profit organization with headquarters in Accra, Ghana,

incorporated under Ghana's Companies Code, 1963 (Act 179), for breach of a contract between

USAID and GSMF under which GSMF was to use the funds provided by USAID to establish and

operate a social marketing program offering family planning and other health-related goods,

services, and information.

### Jurisdiction and Venue

1.      This Court has jurisdiction pursuant to 28 U.S.C. section 1345.

2.     Venue in this district is proper pursuant to 28 U.S.C. section 1391(d), as

Defendant GSMF is an alien within the meaning of that statute.

**Factual Background**

3.     In 1997, USAID entered into Cooperative Agreement No. 641-A-00-97-0078-00

(the Cooperative Agreement) with GSMF through which USAID ultimately disbursed

$5,000,000 (the Grant) to GSMF.  A copy of the Cooperative Agreement, including Attachments

1 (Schedule), 2 (Program Description), and 3 (Standard Provisions for an Endowment with Non-

U.S. Non-Governmental Recipient (Standard Provisions)) is attached as Exhibit 1.

4.     The Cooperative Agreement provides that it was executed on the condition that

the funds disbursed thereunder by USAID to GSMF were to be administered in accordance with

terms and conditions set forth in certain attachments to the Cooperative Agreement, including the

Schedule, Program Description, and Standard Provisions, which individually and together set

forth detailed requirements for GSMF's performance to assure that the funds disbursed by

USAID to GSMF were properly expended.

5.     The initial obligation of $2,000,000 was made concurrently with the execution of

the Cooperative Agreement on May 12, 1997 and was disbursed to GSMF in March 1998.

Thereafter, USAID disbursed the remaining $3,000,000 to GSMF.

6.     The Schedule, at D., provides that "[t]he entire sum of the Grant, including any

earnings and income thereon (the Endowment) shall be invested in financial instruments offered

in the United States market, except as such funds may be periodically expended . . . for the

benefit of [GSMF] in accordance with the Program Description" and that "[a]ll Endowment

funds . . . shall be invested . . . through one or more U.S.-based financial intermediaries."

7.    The purpose of this provision is to ensure that the funds comprising the Endowment remain in the United States unless and until GSMF expends them for the specific purposes set forth in the Cooperative Agreement.

8.    Pursuant to the requirements of the Cooperative Agreement, on March 26, 1998, GSMF retained Merrill Lynch Asset Management, part of Merrill Lynch & Co., at that time a publicly owned corporation and now a wholly-owned subsidiary of Bank of America Corporation, to serve as the U.S.-based financial intermediary that would manage the Endowment on behalf of GSMF. (BlackRock, Inc., which is approximately 34.1% owned by Bank of America Corporation, at times also participated in the management of the Endowment. Together Merrill Lynch Asset Management and BlackRock, Inc. are referred to as Merrill Lynch.) A copy of the Asset Management Agreement, as amended and signed on March 28, 1998, is attached hereto as Exhibit 2.

9.    Thereafter, Merrill Lynch placed the Grant proceeds in a custodial account in United Bank of Virginia (the United Bank account), where they remain.

10.    Aside from bank fees and fees paid to Merrill Lynch for its financial intermediary services, no disbursements have been made from the United Bank account. Specifically, GSMF has made no disbursements from that custodial account.

11.    As of January 31, 2011, the total value of the United Bank account was $5,990,949.

12.    The Standard Provisions of the Cooperative Agreement, at section 3 (Refund and Termination), set forth the bases upon which USAID, in its discretion, may terminate the

Cooperative Agreement and demand return of the unexpended funds of the Endowment.  Exhibit 1, Attachment 3.

13.    Specifically, subsection 3.b.i. provides that USAID may terminate the Cooperative Agreement and demand return of the unexpended funds of the Endowment:

> If [GSMF] misuses Endowment Funds or fails to comply with the provisions of this Agreement, if material deficiencies are found in [GSMF]'s performance in managing its program, if material adverse audit findings are rendered against [GSMF], or if USAID shall reasonably determine that other circumstances exist which will prevent the Endowment from fulfilling its purpose; provided that in any such case the problem has not been corrected within a reasonable period of time as notified in writing by USAID.

14.    Subsection 3.c. of the Cooperative Agreement provides:

> If USAID shall exercise the termination rights described above . . . then in such event . . . all Endowment assets held by the Asset Manager (both principal and income) shall revert to USAID and be returned to the U.S. Treasury . . . If the assets are not turned over within 60 days of a written request therefor, then Recipient shall be directly liable to USAID for the value thereof.

15.    This provision permits USAID to terminate the Cooperative Agreement and demand return of the Endowment's unexpended funds for material breaches not only of the Cooperative Agreement itself, but of other agreements between USAID and GSMF.

16.    The Cooperative Agreement is a contract between USAID and GSMF.

17.    GSMF has been, and remains, in material breach of the terms of the Cooperative Agreement.

Failure to Comply with the Provisions of the Cooperative Agreement.

18.    GSMF's failure to perform its obligations under the contract, subsequent to disbursement of the grant, established firm grounds for USAID to terminate the Cooperative Agreement and demand return of the unexpended funds of the Endowment.

19.     Although GSMF satisfied the initial conditions precedent to disbursement of the grant, as set forth in the Cooperative Agreement, thereafter it has not met any of the substantive requirements imposed upon it by the agreement.

20.     Specifically, GSMF has not (a) satisfied the Special Covenants set forth in the Schedule, (b) prepared and provided to USAID the financial, planning, and other reports required by the Schedule to be prepared and provided to USAID, and, most importantly, (c) has not used the Endowment to establish or operate a social marketing program offering family planning and other health-related goods, services, and information.

Other Material Deficiencies

21.     While GSMF's material breach of the Cooperative Agreement by itself provided ample justification and support for USAID's decision to terminate the agreement and demand return of the Endowment's unexpended funds, GSMF's performance, in general, and with respect to another USAID cooperative agreement with GSMF, specifically, constituted further grounds for USAID's decision to terminate the agreement.

22.     Material Adverse Audit Findings.  In January 2000, USAID entered into a second Cooperative Agreement with GSMF under which it disbursed $6,978,209 to GSMF to support GSMF's efforts to increase the demand for reproductive health services, including family planning and HIV/AIDS/Sexually Transmitted Diseases prevention (Cooperative Agreement No. 641-A-00-00-00079).

23.     In January 2005, the USAID Regional Inspector General issued two separate final reports for final audits (performed by Deloitte & Touche) on this second cooperative agreement.

24.     The audits questioned various costs in excess of $260,000 incurred by GSMF

5

25.     In November 2005, the USAID Regional Inspector General issued a report of a close-out audit on the entire January 2000 cooperative agreement, performed by the Defense Contract Audit Agency (DCAA) on behalf of USAID.

26.     Because of GSMF's inadequate accounting records and its noncompliance with Office of Management and Budget circulars with respect to its performance under the January 2000 agreement, DCAA was not able to obtain sufficient competent evidence on which to base an opinion on allowability, allocability, or reasonableness of GSMF's claimed costs.

27.     The audit concluded that, as a result of GSMF's systemic financial management deficiencies, there were unallowable and unsupported costs in excess of $2,380,000.

28.     Following the completion of the three audits, GSMF was allowed to present support for all of the questioned costs.

29.     Based upon the evidence presented by GSMF and subsequent negotiations between USAID and GSMF, the parties agreed that GSMF was required to repay a total of $964,352 to USAID.

30.     Failure to Abide by Agreements to Repay. After GSMF agreed to repay the $964,352 to USAID, it made certain limited payments to USAID, reducing its debt to USAID on the January 2000 grant to slightly more than $600,000.

31.     On August 8, 2007, USAID mailed to GSMF a Notice of Delinquency letter in which it advised GSMF that, because USAID had not received from GSMF for the prior three months the agreed-upon payments due by GSMF, GSMF was in default. A copy of the August 8, 2007 letter is attached as Exhibit 3.

32.     GSMF has not made any further payments to USAID since August 18, 2007, and the entire unpaid balance of $600,000+ now is due and owing to USAID.

33.     <u>GSMF's Performance in Managing its Program</u>.  USAID, in its cooperative agreements with GSMF, clearly requires not only that GSMF expend the granted funds only in accordance with the agreements' terms and conditions, but that it maintain records to establish clearly that GSMF has so expended those funds.

34.     The Defense Contract Audit Agency, in its report, set forth in detail the serious systemic and reportable deficiencies in GSMF's accounting policies and procedures.  Paragraphs 25 and 26, *supra.*

35.     GSMF's failure to maintain, and to provide to the auditors, such records was a material breach not just of the January 2000 agreement but of the Cooperative Agreement as well, as the Cooperative Agreement specifically requires that there be no "material deficiencies . . . in Recipient's performance in managing its program."

<u>USAID's Decision to Terminate the Cooperative Agreement and Demand Return of Funds</u>

36.     For the reasons set forth in the foregoing paragraphs, USAID properly determined that GSMF was in material breach of the Cooperative Agreement.

37.     On June 18, 2008, USAID properly terminated that agreement, and properly demanded return by GSMF of the Endowment's unexpended funds.  A copy of the June 18, 2008 termination letter is attached as Exhibit 4.

38.     On October 31, 2008, USAID notified Merrill Lynch and United Bank of its decision to terminate the Cooperative Agreement and instructed Merrill Lynch, as Asset Manager, to turn over to USAID, as directed in writing by USAID, all Endowment assets held by

the Asset Manager (i.e., the United Bank account assets). A copy of the October 31, 2008 letter

is attached as Exhibit 5.

39.      GSMF, through a law firm in Ghana, disputed that it was in breach of the

Cooperative Agreement. On March 30, 2009, following a December 11, 2008 meeting between

USAID and the Ghana law firm, USAID confirmed to GSMF that the Cooperative Agreement

had been terminated based upon the breaches of that agreement by GSMF. A copy of the

March 30, 2009 letter is attached as Exhibit 6.

40.      On August 14, 2009, Merrill Lynch, in an e-mail sent to USAID, notified USAID

that it would resign as Asset Manager for the Endowment funds effective September 30, 2009. A

copy of the August 14, 2009 e-mail is attached as Exhibit 7.

41.      On October 21, 2009, USAID notified GSMF of its "final unilateral determination

of debt owed by GSMF to USAID as a result of the [June 18, 2008] termination of [the

Cooperative Agreement] and the demand for payment of that debt." The USAID letter providing

this notification was accompanied by a Bill for Collection and wire transfer instructions for the

return of the Endowment funds by GSMF to USAID. Copies of the October 21, 2009, letter and

accompanying Bill for Collection and wire transfer instructions are attached as Exhibit 8.

42.      Following its decision to terminate the Cooperative Agreement, USAID selected

EXP Social Marketing (ESM), a Ghanian non-governmental organization, as the replacement

recipient/beneficiary under the Cooperative Agreement to perform the activities originally to be

performed by GSMF.

43.      On September 4, 2009, USAID notified GSMF of its selection of ESM as

replacement recipient/beneficiary and requested that GSMF instruct Merrill Lynch, as Asset

Manager, to transfer the Endowment funds in the United Bank account to ESM.  A copy of the September 4, 2009, letter is attached as Exhibit 9.

44.    GSMF did not instruct Merrill Lynch, prior to its resignation as Asset Manager, or United Bank, following Merrill Lynch's resignation as Asset Manager, to transfer the Endowment funds to ESM, and has not taken any other steps to effect that transfer.

45.    Because GSMF is in breach of material provisions of the Cooperative Agreement, including, specifically, subsection 3.c. of the Standard Provisions, GSMF is indebted to USAID in an amount equal to the value of the Endowment funds currently held in the United Bank account, without offset or reduction by GSMF or any other person or entity.

WHEREFORE, Plaintiff United States of America demands judgment against Defendant Ghana Social Marketing Foundation in the amount of the Endowment funds held in the United Bank account, interest thereon, and such other and further relief to which the United States shall be found to be entitled, including any costs incurred by the United States in this action

Respectfully submitted,

TONY WEST
ASSISTANT ATTORNEY GENERAL

RONALD C. MACHEN, JR.
UNITED STATES ATTORNEY

J. CHRISTOPHER KOHN
DIRECTOR

ROBERT E. KIRSCHMAN, JR.
DEPUTY DIRECTOR

    /s/    David S. Klontz
DAVID S. KLONTZ
TRIAL ATTORNEY

D.C. Bar No. 243568
Commercial Litigation Branch, Civil Division
United States Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875
Phone: 202-616-2265
Fax: 202-514-9163
E-mail: david.s.klontz@usdoj.gov

Attorneys for the United States

February 22, 2011